RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

SAMUEL ARELLIO HERNANDEZ,

        *Defendant-Appellant*.

> No. 25-1517

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:24-cr-00142-1—Paul Lewis Maloney, District Judge.

Argued: June 4, 2026

Decided and Filed: July 16, 2026

Before: GRIFFIN, LARSEN, and READLER, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Melissa M. Salinas, Walter Aguilar, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Olivia Kay Ghiselli, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Melissa M. Salinas, Walter Aguilar, Ted Molina, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Constance Turnbull, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

While defendant Samuel Arellio Hernandez was on supervised release, officers suspected that he was violating conditions of that release at an unapproved residence. They searched the house and found three firearms, along with other contraband. Hernandez was indicted for being a felon in possession. He moved to suppress evidence from the search, arguing the officers lacked reasonable suspicion. The district court denied the motion and Hernandez conditionally pleaded guilty, retaining the right to challenge the district court's decision. We affirm.

I.

In 2016, Hernandez pleaded guilty to possession with intent to distribute cocaine base and using or carrying a firearm during and in relation to a drug-trafficking offense. After his term of imprisonment ended in January 2023, he began a three-year term of supervised release.

Hernandez was subject to a number of conditions while on supervised release, two of which prohibited him from possessing firearms and using or possessing controlled substances. He was likewise required to notify his probation officer of any change in his approved residence. And after he tested positive for using marijuana and cocaine on several occasions, the district court imposed additional conditions. These allowed probation officers to monitor his location and search his "person, property, house, residence, . . . [and] papers" whenever "reasonable suspicion" existed that Hernandez "violated a condition of supervision and that the areas to be searched contain evidence of this violation."

Location-monitoring data showed Hernandez spending most of each day at 930 Mahlon Street (the Mahlon House), a three-minute drive from his approved residence at 1311 North Magnolia Avenue (the Magnolia House). And during those days, he frequently left the Mahlon House for short periods and then returned.

Hernandez's probation officer suspected that Hernandez was violating the conditions of his supervised release. So the probation officer began conducting surveillance. One day, he observed Hernandez's vehicle parked at the Mahlon House. After calling Hernandez and asking to meet, he watched Hernandez leave the Mahlon House and drive directly to his approved residence at the Magnolia House. When asked where he had been by his probation officer, Hernandez said that he had been out getting food, saying nothing about the Mahlon House.

Another time, Hernandez called police to the Mahlon House following a domestic-violence incident. According to the police report, a woman purportedly assaulted Hernandez at the house. She told responding officers that Hernandez had placed a firearm in her face and had removed firearms from the residence before police arrived. The police report listed the Mahlon House as Hernandez's residence, and home-surveillance footage captured Hernandez referring to the property as "his house." Yet when Hernandez later reported the incident to probation, he represented that the pair had been at a friend's house before the incident.

By early 2024, the probation officer still suspected that Hernandez was violating multiple conditions of supervised release, namely those barring firearms and controlled substances, as well as the condition requiring 10-day notice before a residency change. As a result, a search was planned for the Mahlon House to look for drugs, paraphernalia, firearms, ammunition, and cell phones.

On the day of the search, the probation officer instructed Hernandez to meet him at the Magnolia House. Although Hernandez said he was in Mason, Michigan—forty minutes away—officers conducting surveillance observed him leave the Mahlon House and drive directly to the Magnolia House. There, officers searched his person, recovered keys, and then proceeded to the Mahlon House with Hernandez. Using one of the keys, they entered the residence. Officers recovered three firearms, controlled substances (including cocaine, methamphetamine, marijuana, and oxycodone), drug paraphernalia, and mail addressed to Hernandez.

Based on the three firearms discovered in the search, Hernandez was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Hernandez moved to suppress the evidence obtained from the search. The district court denied the motion and

Hernandez conditionally pleaded guilty, preserving his right to challenge that ruling.  The district court then sentenced him to 78 months' imprisonment, followed by three years of supervised release.  Hernandez timely appealed.

II.

Hernandez raises two issues on appeal.  First, he asserts the district court erroneously denied his motion to suppress.  Second, he argues that 18 U.S.C. § 922(g)(1) is unconstitutional, both facially and as-applied to him.  We address each in turn.

A.

The Fourth Amendment generally requires a warrant supported by probable cause before the government may conduct a search.  *See* U.S. Const. amend. IV; *Katz v. United States*, 389 U.S. 347 (1967).  But because probationers and supervised releasees possess diminished expectations of privacy, "the usual Fourth Amendment analysis is different." *United States v. Ickes*, 922 F.3d 708, 711 (6th Cir. 2019) (citing *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007)); *United States v. Pope*, 852 F. App'x 945, 949 (6th Cir. 2021) (explaining that "those on supervised release have an even further reduced expectation of privacy" than probationers (citation modified)).  Thus, "no more than reasonable suspicion" is necessary to conduct a search authorized by a condition of supervised release.  *United States v. Knights*, 534 U.S. 112, 121 (2001).

Consistent with this framework, officers could search Hernandez's person and property, so long as they reasonably suspected that he had violated a condition of supervision and that the area to be searched contained evidence of the violation.  Reasonable suspicion "does not present a particularly high bar." *United States v. Belakhdhar*, 924 F.3d 925, 928 (6th Cir. 2019) (citing *Navarette v. California*, 572 U.S. 396, 397 (2014)).  We ask whether, under the totality of the circumstances, the officers had a "particularized and objective basis for suspecting legal wrongdoing." *Herndon*, 501 F.3d at 691 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In Hernandez's view, the district court erred in denying the motion to suppress because officers did not reasonably suspect that firearm or drug activities were occurring at the Mahlon House, nor did they reasonably suspect a residency violation. We review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024). And we conclude that officers reasonably suspected both firearm and drug activities were ongoing at the Mahlon House.

Begin with firearms. The officers received a specific statement from a woman that Hernandez put a gun in her face at the Mahlon House and then removed his weapons from the home. They therefore possessed a concrete basis to believe that firearms had been inside the residence. So even though the report suggested the guns were no longer there, his probation officer reasonably suspected that Hernandez had brought them back.

Two additional points bolstered the concern. First, despite the significant amount of time Hernandez spent at the Mahlon House, he repeatedly attempted to conceal his presence there. Recall that on one occasion he told his probation officer that he was out purchasing food without sharing that he actually had been at the Mahlon House. And on the day of the search, he claimed to be in another city when actually he was at the Mahlon House. By lying to probation about his presence at the house where firearms had reportedly been located, officers had reason to think he was shielding his activities there. And second, Hernandez has prior weapons offenses on his record, which is "particularly probative in this case because [they] involved . . . the same issue which concerned" the probation officer. *United States v. Johnson*, 267 F. App'x 412, 415 (6th Cir. 2008).

Hernandez insists that the woman "had obvious motive to contradict and impugn" Hernandez, so the officers should have been more skeptical. Yet our inquiry looks at the whole picture; reasonable suspicion does not require officers to discard a witness's account simply because reasons to doubt it might exist. The woman, after all, had firsthand knowledge and identified Hernandez's acts with specificity, and because the tip was not anonymous, it came with built-in reliability indicators. *Cf. Florida v. J.L.*, 529 U.S. 266, 271 (2000) (concluding that reasonable suspicion was lacking because "[a]ll the police had to go on . . . was the bare report of

an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information").

At base, "the overall scatterplot"—the woman's report tying firearms to the Mahlon House, Hernandez's concealment of the Mahlon House, and his weapons history—gave "rise to reasonable suspicion" of firearm activities. *Belakhdhar*, 924 F.3d at 928.

The same is true of drug activities. Hernandez repeatedly tested positive for marijuana and cocaine while on supervision, and location-monitoring data showed that he spent large portions of the day at the Mahlon House, repeatedly leaving and returning after short intervals. Based on his training and experience, Hernandez's probation officer viewed that pattern as consistent with drug trafficking. *See United States v. Burrell*, 114 F.4th 537, 552 (6th Cir. 2024); *Arvizu*, 534 U.S. at 273. Furthermore, Hernandez frequently concealed his connection to the Mahlon House. This, again, gave officers reason to believe that he was attempting to hide illegal activity there. And finally, a local officer identified the Mahlon House as likely a drug house when asked by the probation officer. Officers may rely on information provided by other law enforcement officers, even when that communication is qualified. *United States v. Lyons*, 687 F.3d 754, 765–66 (6th Cir. 2012). Accordingly, these facts, viewed together, gave officers reasonable suspicion that the residence contained evidence of drug activity.

In sum, officers possessed a particularized and objective basis to suspect that Hernandez was engaging in firearm and drug activities at the Mahlon House in violation of his conditions of supervised release. Because the officers reasonably suspected these activities were occurring, they were entitled to search the house and seize the firearms discovered in the process.[1]

---

[1]Hernandez additionally maintains that officers exceeded the scope of the search approval form when they took his Mahlon key and opened the Mahlon House door, examined mail addressed to him, and opened a package addressed to him and delivered during the search. But, at most, any overreach may support suppression of the mail, the package, or evidence derived from those items. *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007). It would not affect the seizure of the firearms underlying his conviction. And because Hernandez's conviction concerns only the firearms recovered during the search, any dispute leaves us with "nothing to exclude and therefore no remedy to grant." *United States v. Stimpson*, 113 F.4th 350, 354 (3d Cir. 2024).

III.

Hernandez also challenges 18 U.S.C. § 922(g)(1) as unconstitutional, both facially and as-applied to him. Our precedent forecloses any facial challenge. *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). As to his as-applied challenge, we review for plain error because Hernandez raises the challenge for the first time on appeal. He must initially show (1) error (2) that was plain, and (3) affected his substantial rights. *United States v. Messersmith*, 164 F.4th 523, 526–27 (6th Cir. 2026); *Greer v. United States*, 593 U.S. 503, 507–08 (2021). As part of his burden, he must demonstrate § 922(g)(1) is "clear[ly] or obvious[ly]" unconstitutional as applied to him. *Puckett v. United States*, 556 U.S. 129, 135 (2009). He has not done so.

The "right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), is afforded only to "ordinary, law-abiding citizens," *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 9, 20 (2022) (citations omitted). "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *United States v. Rahimi*, 602 U.S. 680, 698 (2024). A defendant bears the burden of proving he is not dangerous. *Williams*, 113 F.4th at 657.

To assess whether Hernandez is dangerous, we may consider his "entire criminal record," as well as the predicate § 922(g)(1) offense. *Id.* at 657–58. Here, Hernandez's predicate conviction alone suffices to show that he has not demonstrated plain error. He was convicted of possession with intent to distribute cocaine base, coupled with using and carrying a firearm in relation to a drug trafficking offense. Not only is drug trafficking "a serious offense that, in itself, poses a danger to the community," *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (citations omitted), but "drugs and guns are a dangerous combination," *Smith v. United States*, 508 U.S. 223, 240 (1993). *Cf. United States v. Crawford*, 2025 WL 3496999, at *2 (6th Cir. Dec. 5, 2025) ("[A] specific instance of drug trafficking does not need to involve violence, or even an immediate threat of violence, to pose a significant threat of danger."). Drug trafficking also "often leads to violence," and crimes such as these "justify a finding of danger." *Williams*, 113 F.4th at 659.

Accordingly, Hernandez has not shown that applying § 922(g)(1) to him is clearly or obviously unconstitutional.  We therefore discern no plain error.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court and reject Hernandez's constitutional challenge on appeal.